[Cite as *Mann v. Resolution T Co., L.L.C.*, 2014-Ohio-2451.]

## IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MIAMI COUNTY

DENNIS RAY MANN, et al.

     Plaintiffs-Appellants

v.

RESOLUTION T COMPANY, LLC

     Defendant-Appellee

Appellate Case No.    2014-CA-5

Trial Court Case No.   13-471

(Civil Appeal from
 Common Pleas Court)

. . . . . . . . . . .

## O P I N I O N

Rendered on the 6th day of June, 2014.

. . . . . . . . . . .

STEPHEN E. KLEIN, Atty. Reg. No. 0014351, 240 Bohanan Drive, Vandalia, Ohio 45377
     Attorney for Plaintiffs-Appellants

DANIEL A. DEMARCO, Atty. Reg. No. 0038920, PHILLIP G. ECKENRODE, Atty. Reg. No. 0084187, 65 East State Street, Suite 1400, Columbus, Ohio 43215
     Attorneys for Defendant-Appellee

. . . . . . . . . . . .

WELBAUM, J.

{¶ 1}    In this case, Plaintiffs-Appellants, Dennis and Karen Mann ("the Manns") appeal from a judgment denying their motion for summary judgment and granting the

cross-motion for summary judgment of Defendant-Appellee, Resolution T Company, LLC ("Resolution"). The Manns contend that the trial court erred in overruling their motion for summary judgment. In support of this proposition, the Manns make three arguments: (1) that the foreclosure decree in a prior case between the parties was not a final appealable order; (2) a pre-judgment taking of their sale proceeds in the foreclosure case pursuant to a contract claim for attorney fees violates public policy and R.C. 1319.02; and (3) that they are entitled to compensatory damages based on their slander of title claim.

{¶ 2} We conclude that the trial court did not err in rendering summary judgment on Resolution's behalf regarding the claims that challenge attorney fees paid to Resolution in connection with a prior sale of the Manns' property. The foreclosure decree was a final appealable order, and issues relating to attorney fees should have been raised in the foreclosure action, by way of appeal or a Civ.R. 60(B) motion for relief from judgment. These claims, therefore, are barred by res judicata.

{¶ 3} We further conclude that the trial court erred in rendering summary judgment on Resolution's behalf with respect to the claim for slander of title. There are genuine issues of material fact concerning the slander of title claim, and whether Resolution acted in bad faith by refusing to remove a lien on the Manns' property until after the Manns filed an action for slander of title. Accordingly, the judgment of the trial court will be affirmed in part, reversed in part, and remanded for further proceedings.

I. Facts and Course of Proceedings

{¶ 4} This case has a complicated procedural history, as it has spanned three separate

actions filed in the Miami County Court of Common Pleas. The three cases arose from a cognovit note and mortgage signed by the Manns in 2003. In April of 2003, Dennis Mann signed a cognovit note, agreeing to pay Fifth Third Bank ("Fifth") the sum of $65,000 by April 17, 2008. The note allowed any attorney, upon default, to appear on behalf of Dennis Mann and confess judgment in favor of Fifth. The note further agreed that Mann would pay attorney fees for the attorney taking these actions.

{¶ 5} On the same day, the Manns signed an open-end mortgage and security agreement giving Fifth a security interest in property owned by the Manns, in order to secure payment of the note. Article 5 of the mortgage agreement provided for remedies upon default, including acceleration and foreclosure. Article 5.3 of the agreement further stated that:

> There shall be allowed and included as additional indebtedness secured by the lien of the Mortgage, to the extent permitted by law, all expenditures and expenses of Mortgagee for attorney fees, court costs, appraisers' fees, sheriff's fees, documentary and expert evidence, stenographers' charges, publication costs and such other costs and expenses as Mortgagee may deem reasonably necessary to exercise any remedies or to evidence to bidders at any sale of the Property the true condition of the title to or the value of the Property. All such expenditures and expenses shall bear interest at a floating rate per annum equal to six percent (6%) in excess of the Prime Rate of Fifth Third Bank then in effect, and such interest shall be paid by Mortgagor upon demand by Mortgagee and shall be additional indebtedness secured by this Mortgage. Doc. #7, Defendant's Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment and

Defendant's Cross-Motion for Summary Judgment, Affidavit of Roger Kendrick,

¶ 4, and Ex. 2 attached to the Kendrick Affidavit, p. 9.

**{¶ 6}** In September 2009, Fifth assigned the note and mortgage to Resolution. Subsequently, in July 2011, Resolution obtained judgment against the Manns on the cognovit note in Miami County Common Pleas Court Case No. 11-469 ("Cognovit Case"). The trial court did not order attorney fees to be paid, but ordered judgment in the amount still owing on the note, which was $56,394.44. The court also included court costs. In December 2011, Resolution attempted to execute on the Manns' personal property, and court costs were designated in the praecipe as $248.66. Although a hearing was scheduled, it was not held due to uncertainty about whether the Manns had been served. Resolution filed another praecipe in February 2012, again listing the total costs as $248.66.

**{¶ 7}** After the Manns filed a motion for a hearing on the execution, the trial court held a hearing in March 2012, but took the matter under advisement because the parties were attempting to resolve the matter. Apparently, the parties were unable to do so, because Resolution then filed a foreclosure action seeking to foreclose on two parcels of property owned by the Manns. This action was designated as Miami County Common Pleas Court Case No. 12-465 ("Foreclosure Case"), and was assigned to a different judge than the one who had handled the Cognovit Case.

**{¶ 8}** On November 6, 2012, Resolution filed a motion for default and summary judgment in the Foreclosure Case, and the trial court granted a "Judgment Entry Decree of Foreclosure" on December 12, 2012. The court stated in the decree that:

> As of July 11, 2011, pursuant to the Note, there is justly due and owing to

Plaintiff [Resolution] the total unpaid principal balance of the Note, in an amount not less than $56,394.44, plus: (1) attorneys' fees, costs and charges incurred in the collection or enforcement thereof; and (2) all other amounts and charges due and owing under the Note (the "Note Balance"). Doc. #11, Certified Copy of Judgment Entry Decree of Foreclosure, p. 3.

{¶ 9} The court, therefore, ordered the property foreclosed and sold, and held that Resolution was entitled to an amount up to and including the note balance, as the second order of priority, after payment of amounts owed to the Miami County Treasurer. In addition, the court stated that:

It is further ORDERED, ADJUDGED, and DECREED that there may be due to Plaintiff [Resolution] additional sums advanced by it under the terms of the Loan Documents to pay real estate taxes, insurance premiums, property protection, and attorneys' fees, which sums are to be determined by further Order and paid as a "Third Party" priority as provided hereinabove. *Id.* at p. 3.

{¶ 10} No appeal was taken from the foreclosure order, and a foreclosure sale was set for February 27, 2012. The minimum bid at the sale was to be $50,000. Prior to the time the foreclosure order was filed, the Manns contracted with Kenneth Hatton, a licensed real estate broker, to find a buyer for the property.

{¶ 11} The foreclosed property was used by the Manns to access a larger parcel of farmed land, and the foreclosure would mean that the Manns would lose access to this larger parcel. Dennis Mann was told by his attorney that he could avoid foreclosure if he could pay $60,000 to Resolution before the sheriff's sale. Although the Manns were unable to obtain a

loan for that amount, their realtor, Hatton, had obtained a buyer for the property by February 15, 2013. The buyer was willing to pay $100,000 for the property, and was also willing to grant the Manns access across the premises to their other 130-acre parcel.

{¶ 12} On February 26, 2013, the Manns' attorney told Hatton that the sheriff's sale had been postponed until April 17, 2013, and that the buyer's identity had been disclosed to the trial attorney for Resolution. Hatton then contacted the attorney for Resolution, who provided a pay-off amount for principal and interest of $68,809.05 through April 5, 2013 (the anticipated closing date), plus an additional $16,247.36 for attorney fees and expenses/costs. Thus, the total needed to pay off Resolution was $85,056.41.

{¶ 13} The letter from the attorney for Resolution stated that "Once we are in receipt of the funds, we will take steps to dismiss the foreclosure action and release the mortgage and judgment liens." Plaintiff's Motion for Summary Judgment, Doc. # 5, Kenneth Hatton Affidavit, ¶ 13, and Ex. B attached to the Hatton Affidavit, p. 1.

{¶ 14} Resolution then increased its payoff demand to $91,314.90, which included an increase of $6,528.49 allegedly owed for attorney fees, expenses, and costs. Due to Resolution's increased demand, the sale was closed in escrow on April 5, 2013, and Hatton then negotiated a deal in which Resolution accepted $88,000 for its claim, which included $19,190.95 in funds above the amount owed for the note balance. Of the $100,000 paid for the property, the Manns received nothing.

{¶ 15} As a result of the payment, Resolution released its lien on the acreage that was the subject of the Foreclosure Case. However, Resolution did not release its lien on the Manns' 130-acre parcel.

{¶ 16}   In May 2013, the Manns filed a motion in the Cognovit Case, asking for leave to file a supplemental pleading.   On June 5, 2013, the court denied the motion.[1]   The court indicated that it did not award attorney fees in the Cognovit Case and was unaware that the Foreclosure Case had been pending in another court.   The court concluded that it lacked jurisdiction over the motion, because the Cognovit Case judgment was a final appealable order. In addition, the court concluded that the motion could not be considered as a Civ.R. 60(B) motion for relief from judgment because it did not comply with pleading requirements for such a motion.

{¶ 17}   On June 24, 2013, the Manns' attorney sent Resolution's attorney a letter rejecting Resolution's demand for a release of claims by the Manns in exchange for Resolution's provision of a satisfaction of judgment entry and a release of the existing judgment lien on the 130 acre parcel (which was not part of the Foreclosure Case).   Plaintiff's Motion for Summary Judgment, Doc. #5, Faith Morter Affidavit, ¶ 5-7, and Ex. B attached to the Morter Affidavit, p. 1.   Resolution did not respond to this letter.

{¶ 18}   On September 6, 2013, the Manns filed the present action against Resolution, seeking a declaratory judgment that Resolution's judgment had been satisfied and that the judgment lien should be released of record.   The Manns also included claims for slander of title regarding Resolution's failure to release the lien, and three other claims relating to the attorney fees that had been paid to Resolution.   Specifically, the Manns included claims for abuse of process, for "money had and received," and unjust enrichment.   After Resolution filed an answer, the Manns filed a motion for summary judgment.   Resolution then filed a cross-motion

---

[1]   The content of the supplemental pleading is not disclosed in the record.   Based on the court's comments in the entry, we assume the supplemental pleading would have challenged the attorney fees paid to Resolution.

for summary judgment.

{¶ 19}    In January 2014, the trial court filed a judgment entry overruling the Manns' motion for summary judgment and granting Resolution's cross-motion for summary judgment. The trial court noted that the declaratory judgment request was moot, because Resolution had removed its judgment lien from the Cognovit Case on September 9, 2013. Further, the court concluded that there was no proof of special damages or bad faith, because Resolution's judgment lien was never "false"; the Manns owed the money on the judgment in the Cognovit Case. The trial court also held that the abuse of process and equitable claims regarding the attorney fees were unfounded. The court held that the attorney fee issue should have been addressed in the Foreclosure Case, and that there was no abuse of process because the trial court in that case held that Resolution was entitled to attorney fees. The court thus concluded that under either waiver or res judicata, the equitable claims would be barred.

{¶ 20}    The Manns appeal from the judgment overruling their motion for summary judgment and granting Resolution's cross-motion for summary judgment.


Did the Trial Court Err

in Overruling the Manns' Motion for Summary Judgment?

{¶ 21}    The Manns' First Assignment of Error states that:

The Trial Court Erred in Overruling Plaintiff-Appellants' Summary Judgment Motion for the Reason that, as a Matter of Law, (A) The Foreclosure Decree in Case No. 12-466 Is Not a Final Appealable Order.

{¶ 22}    Under this assignment of error, the Manns contend that the trial court erred in

concluding that its equitable claims were barred either by res judicata or waiver, based on the Manns' failure to appeal from the foreclosure order in the Foreclosure Case. The Manns argue that they were not required to appeal from the foreclosure order because it was not a final appealable order. In this regard, the Manns rely on the fact that the foreclosure order failed to specify the dollar amount of attorney fees.

{¶ 23} The Manns begin their argument by observing that the trial court failed to discuss the fact that Resolution filed what purported to be a voluntary dismissal of the Foreclosure Case in April 2013. According to the Manns, the dismissal was a nullity because the decree of foreclosure had already been filed. As support for this proposition, the Manns cite *Countrywide Home Loans Servicing v. Nichpor*, 136 Ohio St.3d 55, 2013-Ohio-2083, 990 N.E.2d 565. In *Nichpor*, the Supreme Court of Ohio held that "[a]fter a judgment entry grants a decree of foreclosure and order of sale, the foreclosure action cannot be dismissed pursuant to Civ.R. 41(A)(1)(a), because that rule pertains only to the voluntary dismissal of a pending case." *Id.* at syllabus. In this regard, the court reasoned that the foreclosure judgment was a final judgment, and the remaining matters in the case were administrative matters that aided execution of the judgment. *Id.* at ¶ 5-6.

{¶ 24} We cannot address this particular argument because the order of dismissal in the Foreclosure Case is not contained in the record before us, and we have no idea what it said. For the same reason, the trial court did not err in failing to discuss this matter. We do note that under Civ.R. 41(A)(1), voluntary dismissals are typically without prejudice, and generally contemplate the filing of another action. In contrast, where a foreclosure judgment or any other judgment, for that matter, has been satisfied by payment of the obligation, the dismissal should be

with prejudice to a new action.

{¶ 25}   The Manns next argue that the foreclosure judgment was not final because the trial court in the Foreclosure Case failed to set forth the amount of damages.   Instead, the foreclosure order simply stated that sums for additional items, including attorney fees, "may" be due, and that the sums for these items would be determined in a further order that would also establish their priority.   According to the Manns, this lack caused the foreclosure order not to be final.   This in turn, would mean that the foreclosure order would not have a res judicata effect.

{¶ 26}   "A foreclosure action is a two-step process, the first part of which ends with the judgment and decree of foreclosure, which is a final appealable order. * * *   The second part of the process involves the sale of the property, culminating in a confirmation of sale and dispersal of the proceeds."   *Fifth Third Bank v. Dayton Lodge Ltd. Liab. Co.*, 2d Dist. Montgomery No. 24843, 2012-Ohio-3387, ¶ 18, citing *Mid-State Trust IX v. Davis*, 2d Dist. Champaign No. 07-CA-31, 2008-Ohio-1985, ¶ 23-25.   In *Nichpor*, the Supreme Court of Ohio stressed that after the foreclosure order, all that remains are "administrative matters finalizing the result of the sheriff's sale and giving the mortgagors the opportunity to exercise their equitable right of redemption.   These actions can be classified as proceedings to aid in execution of the judgment." *Nichpor* at ¶ 6.   The court also noted that debtors may immediately appeal foreclosure orders, and that the " 'second phase of the proceedings is viewed as a separate and distinct action seeking enforcement of an order of sale and decree of foreclosure.' "   *Id.*, quoting *Triple F Invests. v. Pacific Fin. Serv., Inc.*, 11th Dist. Portage No. 2000-P-0090, 2001 WL 589343, *3 (June 2, 2001).   (Other citation omitted.)

**{¶ 27}** We have previously held, in a decision cited by the Manns, that "where attorney fees are awarded, * * * but the amount is not specified, the [foreclosure] order is not final and appealable." *German American Capital Corp. v. FLG Properties Dayton, LLC*, 2d Dist. Montgomery No. 25656, *A-2 (May 1, 2013), citing *Dayton Women's Health Ctr., Inc. v. Enix*, 86 Ohio App.3d 777, 621 N.E.2d 1262 (2d Dist.1993), and *FirstMerit Bank, N.A. v. Moore*, 183 Ohio App.3d 550, 2009-Ohio-3928, 917 N.E.2d 864 (9th Dist.). Some courts hold otherwise, and the Supreme Court of Ohio recently settled the issue by concluding that "[a] judgment decree in foreclosure that allows as part of recoverable damages unspecified amounts advanced by the mortgagee for inspections, appraisals, property protection, and maintenance is a final, appealable order pursuant to R.C. 2505.02(B)(1)." *CitiMortgage, Inc. v. Roznowski*, Slip Opinion No. 2014-Ohio-1984, paragraph one of the syllabus. The court did stress that "for a judgment decree in foreclosure to constitute a final order, it must address the rights of all lienholders and the responsibilities of the mortgagor." *Id*. at ¶ 20.

**{¶ 28}** The foreclosure order in the case before us did address the rights of the lienholders and the Manns' responsibilities. Accordingly, the order was final and the question of the entitlement to attorney fees could have been appealed, even though the amount had not yet been set. If the Manns wished to challenge the amount of attorney fees, they could have done so in the context of the foreclosure action, either by filing a notice of appeal or by filing a motion for relief from judgment under Civ.R. 60(B). In *Roznowski*, the Supreme Court indicated that the amounts expended by a mortgagee for items like inspections and property protection may be challenged in an appeal from a confirmation order. *Id.* at ¶ 35. The Manns' failure to take any action in the Foreclosure Case prevents them from relitigating the issue of Resolution's

entitlement to attorney fees.

**{¶ 29}** "Res judicata is a doctrine of judicial preclusion." *State v. Harris*, 2d Dist. Montgomery No. 24739, 2012-Ohio-1853, ¶ 14. "The doctrine of res judicata encompasses the two related concepts of claim preclusion, also known as res judicata or estoppel by judgment, and issue preclusion, also known as collateral estoppel." *O'Nesti v. DeBartolo Realty Corp.*, 113 Ohio St.3d 59, 2007-Ohio-1102, 862 N.E.2d 803, ¶ 6, citing *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 381, 653 N.E.2d 226 (1995). "Claim preclusion prevents subsequent actions, by the same parties or their privies, based upon any claim arising out of a transaction that was the subject matter of a previous action. Where a claim could have been litigated in the previous suit, claim preclusion also bars subsequent actions on that matter." (Citations omitted.) *Id.*

**{¶ 30}** The parties in this case were both parties to the Foreclosure Case, and the claim arises out of the foreclosure transaction. It could also have been litigated in that action, by way of an appeal or through a motion for relief from judgment. If the issue of entitlement to fees had been resolved in the Manns' favor, Resolution could have been required to return the fees. We, therefore, agree with the trial court that claims relating to the attorney fees paid to Resolution are barred by res judicata.

**{¶ 31}** Furthermore, based on the application of res judicata, we do not need to discuss the trial court's alternate ruling on waiver. Accordingly, the Manns' First Assignment of Error is overruled.

### III.  Did the Contract Claim for Attorney Fees Violate Public Policy?

**{¶ 32}** The Manns' Second Assignment of Error states that:

The Trial Court Erred in Overruling Plaintiff-Appellants' Summary Judgment Motion for the Reason that, as a Matter of Law, (B) A Prejudgment Taking of Plaintiff-Appellants' Sale Proceeds Pursuant to a Contract Claim for Attorney Fees Violates: (1) Public Policy[;] (2) R.C. 1319.02.

**{¶ 33}** Under this assignment of error, the Manns contend that awards of attorney fees in foreclosure actions have historically been denied as against public policy. In addition, the Manns argue that even though R.C. 1319.02 permits attorney fees in transactions over $100,000, that statute would not apply to the fees in the case before us, because the loan was for less than that amount.

**{¶ 34}** In view of our resolution of the First Assignment of Error, this assignment of error is moot. Again, the Manns could have raised these issues in the Foreclosure Case, but chose not to do so. Accordingly, the Second Assignment of Error is overruled, as moot.

IV. Were the Manns Entitled to Compensatory Damages
on their Slander of Title Claim?

**{¶ 35}** The Manns' Third Assignment of Error states as follows:

The Trial Court Erred in Overruling Plaintiff-Appellants' Summary Judgment Motion for the Reason that, as a Matter of Law, (C) Plaintiff-Appellants Were Entitled to Compensatory Damages Pursuant to Their Slander of Title Claim.

**{¶ 36}** Under this assignment of error, the Manns contend that the trial court should have granted their motion for summary judgment on the slander of title claim. They note that

Resolution refused to remove its judgment lien on other property they owned for five months, despite having received the $88,000 pay-off for the money that it was owed. The trial court granted summary judgment to Resolution after finding no evidence of special damages or bad faith. The court's decision was also based on the fact that the judgment lien was not false because the Manns, in fact, owed the money to Resolution.

**{¶ 37}** We have previously noted that "[a] trial court may grant a moving party summary judgment pursuant to Civ. R. 56 if there are no genuine issues of material fact remaining to be litigated, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party, who is entitled to have the evidence construed most strongly in his favor." (Citation omitted.) *Smith v. Five Rivers MetroParks*, 134 Ohio App.3d 754, 760, 732 N.E.2d 422 (2d Dist.1999). "We review summary judgment decisions de novo, which means that we apply the same standards as the trial court." (Citations omitted.) *GNFH, Inc. v. W. Am. Ins. Co.*, 172 Ohio App.3d 127, 2007-Ohio-2722, 873 N.E.2d 345, ¶ 16 (2d Dist.)

**{¶ 38}** "Slander of title is a tort action which may be ' "brought against any one who falsely and maliciously defames the property, either real or personal, of another, and thereby causes him some special pecuniary damage or loss." ' " *Green v. Lemarr*, 139 Ohio App.3d 414, 430, 744 N.E.2d 212 (2d Dist.2000), citing *Buehrer v. Provident Mut. Life Ins. Co. of Philadelphia*, 37 Ohio App. 250, 256, 174 N.E. 597 (6th Dist.1930), *aff'd.*, 123 Ohio St. 264, 175 N.E. 25 (1931). In order to prevail, a claimant must prove that:

> "(1) there was a publication of a slanderous statement disparaging
>
> claimant's title; (2) the statement was false; (3) the statement was made with

malice or made with reckless disregard of its falsity; and (4) the statement caused actual or special damages." *Green* at 430-31, quoting *Colquhoun v. Webber*, 684 A.2d 405, 409 (Me.1996).

**{¶ 39}** On consideration, we disagree with the trial court's analysis of Resolution's alleged "false" statement. Although the lien may have been accurate when it was filed, it became false once the debt was paid and Resolution refused to remove the lien. One could also conclude that Resolution acted with reckless disregard of the falsity. In this regard, we note the statement from Resolution's attorney that Resolution would take steps to release the lien once it had been paid. Resolution not only failed to do so for five months, it also demanded a release of claims by the Manns as a condition of releasing the lien, when the debt underlying the lien had already been fully paid. In addition, Resolution released the lien only after the Manns filed the action for slander of title. These actions arguably were done in bad faith, which has been defined as " 'that which imports a dishonest purpose and implies wrongdoing or some motive of self-interest.' " *Master Chemical Corp. v. Inkrott*, 55 Ohio St.3d 23, 28, 563 N.E.2d 26 (1990), quoting *Smith v. Halverson*, 273 N.W.2d 146, 150-151 (S.D. 1978). (Other citation omitted.) Bad faith has also been defined as importing " 'a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another.' " *State v. Franklin*, 2d Dist. Montgomery No. 19041, 2002-Ohio-2370, ¶ 47, quoting *State v. Buhrman*, 2d Dist. Greene No. 96 CA 145, 1997 WL 566154, *12 (Sept. 12, 1997).

**{¶ 40}** With respect to the measure of damages for slander of title, we have indicated that "in a proper case, a party could recover the attorney fees incurred in removing a cloud on title

as 'special damages,' and could also recover attorney fees for prosecuting a slander of title action. The latter fees would not be included in 'special damages' but would arise from a finding of bad faith."   *Green,* 139 Ohio App.3d at 435-436, 744 N.E.2d 212.

{¶ 41}   After reviewing the record, we conclude that genuine issues of material fact exist regarding the slander of title claim, and whether Resolution acted in bad faith.   The trial court, therefore, erred in rendering summary judgment on Resolution's behalf on this point.

{¶ 42}   Accordingly, the Manns' Third Assignment of Error is sustained.

V.   Motion for Sanctions

{¶ 43}   As a final matter, we note that Resolution filed a motion for sanctions in our court on March 28, 2014.   Resolution's motion is based on App.R. 23, which allows an award of reasonable expenses, including attorney fees and costs, if an appellant's appeal is found to be frivolous.   According to Resolution, the Manns had no reasonable grounds for their attorney fee argument.

{¶ 44}   We have cautioned a litigant to be mindful of App.R. 23, for example, where the trial court relied on an Ohio Supreme Court case that expressly overruled the appellant's only legal authority to support an assignment of error.   *Szotak v. Moraine Country Club, Inc.*, 172 Ohio App.3d 34, 2007-Ohio-2974, 872 N.E.2d 1270, ¶ 27   (2d Dist.)   Even in that situation, however, we did not impose sanctions.

{¶ 45}   The fact that a party may disagree with another party's position, or may even be perturbed at having to defend its own position does not mean that an appeal is frivolous. Accordingly, the motion for sanctions is overruled.

## VI.   Conclusion

**{¶ 46}**   The Manns' First Assignment of Error having been overruled, their Second Assignment of Error having been overruled, as moot, and their Third Assignment of Error having been sustained, the judgment of the trial court is affirmed in part and reversed in part.   This cause is remanded to the trial court for further proceedings.

. . . . . . . . . . . . .

FROELICH, P.J., and HALL, J.,    concur.

Copies mailed to:

Stephen E. Klein
Daniel A. DeMarco
Phillip G. Eckenrode
Hon. Robert J. Lindeman