[Cite as *Mann v. Resolution T Co., L.L.C.*, 2015-Ohio-3266.]

## IN THE COURT OF APPEALS OF OHIO
### SECOND APPELLATE DISTRICT
### MIAMI COUNTY

| | | |
|---|---|---|
| DENNIS RAY MANN, et al. | : | |
| | : | |
| Plaintiffs-Appellants | : | C.A. CASE NO.   2015-CA-11 |
| | : | |
| v. | : | T.C. NO. 13-471 |
| | : | |
| RESOLUTION T COMPANY, LLC | : | (Civil Appeal from |
| | : |  Common Pleas Court) |
| Defendant-Appellee | : | |
| | : | |

. . . . . . . . . . .

# O P I N I O N

Rendered on the ___14th___ day of ____August____, 2015.

. . . . . . . . . . .

STEPHEN E. KLEIN, Atty. Reg. No. 0014351, 240 Bohanan Drive, Vandalia, Ohio 45377
        Attorney for Plaintiffs-Appellants

DANIEL A. DeMARCO, Atty. Reg. No. 0038290 and PHILLIP G. ECKENRODE, Atty.
Reg. No. 0084187, 65 East State Street, Suite 1400, Columbus, Ohio 43215
        Attorney for Defendant-Appellee

. . . . . . . . . . . . .

FROELICH, P.J.

{¶ 1} Dennis and Karen Mann appeal from a judgment of the Miami County Court of Common Pleas, which granted summary judgment to Resolution T Co., LLC, on the Manns' slander of title and bad faith claims.  For the following reasons, the trial court's judgment will be reversed and the matter will be remanded for further proceedings.

### I. Background and Procedural History

{¶ 2} This case was previously before this court in *Mann v. Resolution T Co., LLC*, 2d Dist. Miami No. 2014-CA-5, 2014-Ohio-2451 ("*Mann I*"), and a thorough procedural history was provided therein. We highlight the pertinent parts here.

{¶ 3} In April 2003, Dennis Mann executed a cognovit note in the amount of $65,000 for a loan provided by Fifth Third Bank. To secure the note, Dennis and Karen Mann executed a mortgage on two tracts of land. In 2009, the note and mortgage were assigned to Resolution. On July 12, 2011, Resolution obtained a monetary judgment against the Manns on the cognovit note in the amount of $56,394.44, plus interest and costs. (Miami C.P. No. 11-469.) Resolution filed judgment liens on the two mortgaged parcels, as well as on an adjacent 130-acre parcel of real estate owned by the Manns.

{¶ 4} Resolution subsequently brought a foreclosure action against the Manns, seeking to satisfy the monetary judgment by foreclosing on the two parcels of the property for which Resolution had mortgage and judgment liens. (Miami C.P. No. 12-465) The foreclosure action did not involve the adjacent 130-acre parcel.

{¶ 5} On December 12, 2012, the trial court in the foreclosure action filed a judgment entry and decree of foreclosure and ordered the property (the two parcels) to be sold. The judgment entry ordered the proceeds of the sale to be distributed in the following order: (1) to the Miami County Treasurer, (2) to Resolution, in an amount up to and including the note balance, and (3) the balance to be held by the clerk of courts pending further order of the court. The court further ordered: "[T]here may be due to Plaintiff additional sums advanced by it under the terms of the Loan Documents to pay real estate taxes, insurance premiums, property protection, and attorneys' fees, which sums are to be determined by further Order, and paid as a 'Third' priority as provided

hereinabove."

{¶ 6} Prior to a sheriff's sale, the Manns contracted with Kenneth Hattan, a licensed real estate broker, to find a buyer for the two foreclosed properties. By February 15, 2013, Hattan had obtained a buyer who was willing to pay $100,000 for the parcels and to grant the Manns access across the foreclosed properties to the Manns' additional 130-acre parcel.

{¶ 7} On February 26, 2013, the Manns' attorney told Hattan that the sheriff's sale had been postponed until April 17, 2013, and that the buyer's identity had been disclosed to the trial attorney for Resolution. Hattan then contacted the attorney for Resolution, who on March 28 provided a pay-off amount for principal and interest of $68,809.05 through April 5, 2013 (the anticipated closing date), plus an additional $16,247.36 for attorney fees and expenses/costs. The total amount needed to pay off Resolution was $85,056.41. The letter from Resolution's attorney stated, "Once we are in receipt of the funds, we will take steps to dismiss the foreclosure action and release the mortgage and judgment liens."

{¶ 8} By April 5, Resolution had increased its payoff demand to $91,314.90, which included an increase of $6,528.49 allegedly owed for attorney fees. Due to Resolution's increased demand, the sale was closed in escrow on April 5, 2013, and Hattan negotiated an agreement in which Resolution accepted $88,000 for its claim, which included $19,190.95 in funds above the amount owed for the note balance. The Manns received none of the $100,000 paid for the property.

{¶ 9} As of result of the payment, Resolution released its mortgage and judgment liens on the two parcels that were the subject of the foreclosure action. However,

Resolution did not release its judgment lien on the Manns' additional 130-acre parcel.

**{¶ 10}** In May 2013, the Manns filed a motion (which is not in the record) in Case No. 11-469, the cognovit note action, seeking leave to file a supplemental pleading; the record does not identify the nature of the pleading. The trial court denied the motion, noting that it had already entered a final appealable order. The court further indicated that it had not awarded attorney fees and that it was unaware of the foreclosure action.

**{¶ 11}** Resolution contacted the Manns, offering to forgive the additional $3,314.90 ($91,314.90 - $88,000 = $3,314.90) that it claimed was owed on the note, to provide a satisfaction of judgment, and to release the existing judgment lien on the 130-acre parcel in exchange for a release of claims by the Manns. On June 24, 2013, the Manns' attorney sent Resolution's attorney a letter rejecting Resolution's proposal.

**{¶ 12}** On September 6, 2013, the Manns filed this action, seeking a declaratory judgment that Resolution's judgment has been paid in full and that the judgment lien is released of record. They also brought claims for slander of title, abuse of process, "money had and received," and unjust enrichment. The Manns sought compensatory damages of $19,190.95, plus statutory interest, and for the abuse of process claim, additional compensatory damages, punitive damages of $10,000, and attorney fees.

**{¶ 13}** On September 9, 2013, the court in the cognovit note case, upon the Manns' motion, ordered that the judgment lien (on the 130-acre parcel) be released. The court stated, "The judgment lien in this case only secures the principal, interest and costs from this case. Since the amount received by the Plaintiff at the closing on April 5, 2013, as reflected in the exhibits attached to the Defendant's motion, far exceeded the principal, interests and costs rendered in this case, and reflected in the judgment lien, the

Defendants are entitled to have the judgment lien released."

{¶ 14} In November 2013, the Manns moved for summary judgment in this case, and Resolution filed a cross-motion for summary judgment. On January 29, 2014, the trial court overruled the Manns' motion and granted Resolution's cross-motion.

{¶ 15} In granting summary judgment to Resolution, the trial court noted that the declaratory judgment action (Count One) was moot, because the judgment lien from Case No. 11-469 was removed on September 9, 2013. Regarding the slander of title claim (Count Two), the trial court concluded that there was no proof of special damages or bad faith, because Resolution's judgment lien was never "false." The trial court further stated that the assessment of attorney fees should have been addressed in the foreclosure action. The trial court granted summary judgment on Count Three, abuse of process, reasoning that the foreclosure action was not instituted for an improper purpose and that the trial court in the foreclosure action had ordered that Resolution was entitled to attorney fees. Finally, on the equitable claims raised in Counts Four and Five, the trial court determined that the evidence did not support the Manns' claims. The court commented that "[p]roblematic from this Court's perspective is the position the Manns take by filing tort or equity claims instead of pursuing appeals." The trial court concluded that, under either waiver or res judicata, the equitable claims were barred.

{¶ 16} The Manns appealed the trial court's summary judgment ruling. We affirmed the grant of summary judgment to Resolution on Counts 4 and 5, agreeing with the trial court that "claims relating to attorney fees paid to Resolution are barred by res judicata." The Manns did not raise assignments of error related to Counts One and Three. As for the slander of title claim, we disagreed with the trial court's conclusion

regarding the falsity of the lien.   We stated:

> * * * Although the lien may have been accurate when it was filed, it became false once the debt was paid and Resolution refused to remove the lien.   One could also conclude that Resolution acted with reckless disregard of the falsity.   In this regard, we note the statement from Resolution's attorney that Resolution would take steps to release the lien once it had been paid.   Resolution not only failed to do so for five months, it also demanded a release of claims by the Manns as a condition of releasing the lien, when the debt underlying the lien had already been fully paid.   In addition, Resolution released the lien only after the Manns filed the action for slander of title.   These actions arguably were done in bad faith, which has been defined as "'that which imports a dishonest purpose and implies wrongdoing or some motive of self-interest.'"   Bad faith has also been defined as importing "'a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another.'"

> With respect to the measure of damages for slander of title, we have indicated that "in a proper case, a party could recover the attorney fees incurred in removing a cloud on title as 'special damages,' and could also recover attorney fees for prosecuting a slander of title action.   The latter fees would not be included in 'special damages' but would arise from a finding of bad faith."

After reviewing the record, we conclude that genuine issues of material fact exist regarding the slander of title claim, and whether Resolution acted in bad faith. The trial court, therefore, erred in rendering summary judgment on Resolution's behalf on this point.

(Citations omitted.) *Mann I*, 2d Dist. Miami No. 2014-CA-5, 2014-Ohio-2451, at ¶ 39-41. We remanded to the trial court for further proceedings.

{¶ 17} On January 5, 2015, upon remand, the Manns moved for summary judgment on the issue of liability pertaining to their slander of title claim. The Manns asserted that our (court of appeals) opinion "conclusively determined" that the lien had become false when it was not promptly released, and that conclusion was supported by the September 9, 2013 order in the cognovit note case releasing the judgment lien. The Manns further argued that the evidence established, as a matter of law, that Resolution acted with malice or reckless disregard during the five months that it refused to release the lien. Finally, they claimed that they ought to be reimbursed for their additional legal fees incurred in this litigation because Resolution acted in bad faith by refusing to release the lien.

{¶ 18} Resolution opposed the motion for summary judgment and filed a cross-motion for summary judgment. It stated that the Manns knew that if Resolution agreed to accept a reduced payoff in exchange for cancelling the sheriff's sale, Resolution would not be made whole and that Resolution would only release the liens on the foreclosed property. Resolution further stated that, when the sale closed, Resolution applied the proceeds to attorney fees first, and thus the Manns continued to owe $3,000 on their obligation secured by the judgment lien. Resolution thus argued that the lien

was not false, because its decision "to leave the lien in place was consistent with the accounting of indebtedness agreed to by Plaintiffs in the loan documents." Resolution claimed that its action also did not amount to malicious conduct or bad faith. Finally, Resolution argued that the Manns' claims were barred by waiver by estoppel, based on the fact that the Manns knew that Resolution was going to leave the judgment lien in place following the closing and payment of $88,000.

{¶ 19} In their reply brief, the Manns emphasized that the law of the case doctrine and res judicata required judgment, as a matter of law, in their favor.

{¶ 20} On March 11, 2015, the trial court granted Resolution's motion for summary judgment and overruled the Manns' motion. Initially, the trial court found that, based on law of the case, there was a publication of a slanderous statement disparaging the Manns' title and that the statement was false.

{¶ 21} The trial court further concluded, however, that the evidence established that the Manns "consummated the sale knowing that [Resolution] intended to concede a partial release of the lien" and that "the judgment lien was to remain in place until the entire balance of the judgment was paid." The trial court emphasized that "at the point of sale, neither party knew or understood that the judgment lien would ultimately be found to be false by the Court of Appeals." The court further noted that the promissory note detailed the method of calculation for the amount due and owing under the loan; the court found that Resolution's "refusal to remove the lien was not malicious but consistent with the accounting for indebtedness under the loan documents." Thus, the trial court concluded that no genuine issue of fact existed and that the Manns had failed to provide any evidence that Resolution acted with malice or reckless disregard as to the falsity of

the lien. Finally, the trial court concluded, as a matter of law, that Resolution's failure to appeal an adverse ruling (the September 9, 2013 order releasing the judgment lien) and its engaging in settlement negotiations did not amount to bad faith.

{¶ 22} The Manns' appeal from the trial court's judgment.

## II. Slander of Title and Bad Faith

{¶ 23} The Manns raise two assignments of error on appeal, namely that the trial court erred in granting Resolution's motion for summary judgment and that the trial court erred in denying the Manns' motion for partial summary judgment on liability.

{¶ 24} Pursuant to Civ.R. 56(C), summary judgment is proper when (1) there is no genuine issue as to any material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds, after construing the evidence most strongly in favor of the nonmoving party, can only conclude adversely to that party. *Zivich v. Mentor Soccer Club, Inc.*, 82 Ohio St.3d 367, 369-370, 696 N.E.2d 201 (1998). The moving party carries the initial burden of affirmatively demonstrating that no genuine issue of material fact remains to be litigated. *Mitseff v. Wheeler*, 38 Ohio St.3d 112, 115, 526 N.E.2d 798 (1988). To this end, the movant must be able to point to evidentiary materials of the type listed in Civ.R. 56(C) that a court is to consider in rendering summary judgment. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996). Those materials include "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, filed in the action." *Id.* at 293; Civ.R. 56(C).

{¶ 25} Once the moving party satisfies its burden, the nonmoving party may not rest upon the mere allegations or denials of the party's pleadings. *Dresher* at 293; Civ.R.

56(E). Rather, the burden then shifts to the nonmoving party to respond, with affidavits or as otherwise permitted by Civ.R. 56, setting forth specific facts that show that there is a genuine issue of material fact for trial. *Id.* Throughout, the evidence must be construed in favor of the nonmoving party. *Id.*

{¶ 26} We review the trial court's ruling on a motion for summary judgment de novo. *Schroeder v. Henness*, 2d Dist. Miami No. 2012 CA 18, 2013-Ohio-2767, ¶ 42. "De novo review means that this court uses the same standard that the trial court should have used, and we examine the evidence to determine whether as a matter of law no genuine issues exist for trial." *Brewer v. Cleveland City Schools Bd. of Edn.*, 122 Ohio App.3d 378, 383, 701 N.E.2d 1023 (8th Dist.1997), citing *Dupler v. Mansfield Journal Co., Inc.*, 64 Ohio St.2d 116, 119-20, 413 N.E.2d 1187 (1980). Therefore, the trial court's decision is not granted deference by the reviewing appellate court. *Powell v. Rion*, 2012-Ohio-2665, 972 N.E.2d 159, ¶ 6 (2d Dist.).

{¶ 27} "An individual may be held liable for slander of title when he 'falsely and maliciously defames the property of another, causing him special damage.'" *Jones v. Davenport*, 2d Dist. Montgomery No. 18162, 2001 WL 62513, *3 (Jan. 26, 2001), quoting *Builder Services, Inc. v. Habitat Condominium Owner's Assn.*, 2d Dist. Montgomery No. 17247, 1999 WL 22606 (Jan. 22, 1999). In order to prevail on a slander of title claim, a plaintiff must establish (1) there was a publication of a slanderous statement disparaging the plaintiff's title; (2) the statement was false; (3) the statement was made with malice or reckless disregard of its falsity; and (4) the statement caused actual or special damages. *Mann I*, 2d Dist. Miami No. 2014-CA-5, 2014-Ohio-2451, at ¶ 38, citing *Green v. Lemarr*, 139 Ohio App.3d 414, 430-31, 744 N.E.2d 212 (2d Dist.2000).

{¶ 28} With respect to the trial court's grant of summary judgment to Resolution, the Manns argue that Resolution's summary judgment motion was identical to the motion it previously filed, which was granted by the trial court and reversed on appeal. The Manns state that the trial court disregarded the law of the case when it again granted Resolution's motion and that Resolution's positions are barred by res judicata.

{¶ 29} The law-of-the-case doctrine "provides that the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels." *Nolan v. Nolan*, 11 Ohio St.3d 1, 3, 462 N.E.2d 410 (1984). This doctrine "is considered to be a rule of practice rather than a binding rule of substantive law and will not be applied so as to achieve unjust results." *Id*. "However, the rule is necessary to ensure consistency of results in a case, to avoid endless litigation by settling the issues, and to preserve the structure of superior and inferior courts as designed by the Ohio Constitution." *Id.* The Supreme Court of Ohio has stressed that:

> In pursuit of these goals, the doctrine functions to compel trial courts to follow the mandates of reviewing courts. Thus, where at a rehearing following remand a trial court is confronted with substantially the same facts and issues as were involved in the prior appeal, the court is bound to adhere to the appellate court's determination of the applicable law. Moreover, the trial court is without authority to extend or vary the mandate given.

(Citations omitted.) *Nolan* at 3-4.

{¶ 30} The trial court did not disregard the law of the case in reaching its summary judgment decision. The trial court recognized that this court ruled in the prior appeal

(*Mann I*) that, "[a]lthough the lien may have been accurate when it was filed, it became false once the debt was paid and Resolution refused to remove the lien." Based on our ruling, the trial court found that the issue of falsity had been established in the Manns' favor. *Mann I*, 2d Dist. Miami No. 2014-CA-5, 2014-Ohio-2451, at ¶ 39.

**{¶ 31}** However, we did not determine, as a matter of law, that the false statement was made with malice or reckless disregard of its falsity or that Resolution had acted in bad faith. To the contrary, we stated that "one could also conclude that Resolution acted with reckless disregard of the falsity," and we found that genuine issues of material fact existed. Accordingly, the law of the case doctrine did not require judgment in the Manns' favor on their slander of title claim.

**{¶ 32}** Nor is judgment in the Manns' favor required by the doctrine of res judicata. "Res judicata is a doctrine of judicial preclusion. It states that '[a] valid, final judgment rendered upon the merits *bars* all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action.'" (Emphasis sic.) *Lamar Outdoor Advertising v. Dayton Bd. of Zoning Appeals*, 2d Dist. Montgomery No. 18902, 2002 WL 1349600, *2 (June 21, 2002), quoting *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 653 N.E.2d 226 (1995), paragraph one of the syllabus; *Springfield Venture, L.L.C. v. U.S. Bank, N.A.*, 2015-Ohio-1983, 33 N.E.3d 85, ¶ 23 (2d Dist.). As we recently stated in *Springfield Venture*,

> We have stressed that "[w]e are particularly persuaded by the supreme court's pronouncements that 'an existing final judgment or decree between the parties to litigation is conclusive as to all claims which were or might have been litigated in the first lawsuit' and that '[t]he doctrine of res judicata

requires a plaintiff to present every ground for relief in the first action, or be forever barred from asserting it.'" *McCory v. Clements*, 2d Dist. Montgomery No. 19043, 2002 WL 857721, *3 (Apr. 26, 2002), quoting *Grava* at 382, 653 N.E.2d 226. *Accord SunTrust Bank v. Wagshul*, 2d Dist. No. 25567, 2013-Ohio-3931, ¶ 8.

*Springfield Venture* at ¶ 24.

**{¶ 33}** The Manns argue that Resolution is bound by judgments that the judgment lien on the 130-acre parcel became false upon the closing of the sale on the other two parcels. Both the trial court in the cognovit note action and this appellate court concluded that Resolution was required to release the judgment lien after receiving the $88,000 payment. However, the issue remaining for summary judgment is whether Resolution acted with malice or reckless disregard of the falsity of the lien when it failed to promptly release the judgment lien on the additional parcel. That issue has not been decided by any court, and res judicata does require judgment in the Manns' favor.

**{¶ 34}** Upon review of the record, we find that genuine issues of material fact remain as to whether Resolution's failure to release the entire judgment lien along with the mortgage lien constituted malice or a reckless disregard of the falsity of the judgment lien.

**{¶ 35}** Roger Kendrick, President of Resolution, stated in his affidavit that, when Resolution initiates litigation "to collect on a debt secured by loan documents which provide for payment of attorney fees and costs incurred in collection, monies received from those collection efforts are first applied to attorneys' fees and costs, and then to interest and principal." Consistent with that statement, Kendrick further stated that the

$88,000 paid by the Manns out of the closing funds was first applied to attorneys' fees that were outstanding; the result was that $3,314.90 remained due and owing on the debt, together with attorneys' fees and costs which continued to accrue. Kendrick indicated that, in an effort to bring finality to the dispute, Resolution offered to release the judgment lien and forgive the remaining indebtedness in exchange for a release of claims by the Manns.

**{¶ 36}** The cognovit note, attached to Resolution's January 2015 cross-motion for summary judgment as Exhibit B, provided that "Borrower shall pay all costs of collection incurred by Lender, including its attorney fees, if this Note is referred to an attorney for collection, whether or not payment is obtained before entry of judgment, which costs and fees are Obligations secured by the Collateral." In addition, the trial court's judgment in the foreclosure action provided that Resolution was entitled to attorney fees and costs incurred as part of the foreclosure action.

**{¶ 37}** Finally, Resolution provided email communications, in which counsel for Resolution informed Hattan that the required payoff amount was $91,314 in order to release the entire judgment lien. In an email dated April 8, 2013, counsel wrote, "[I]f you can confirm that all of the $89,593 is available for payment to Resolution T, we can provide a revised payoff to that effect, with a *partial release of lien* to be signed (i.e., any deficiency will still be secured by a lien on other real property)." (Emphasis added.) Construing Resolution's evidence in Resolution's favor (as is required when considering the Manns' motion for summary judgment), a reasonable factfinder could conclude that Resolution did not act with malice or reckless disregard to the falsity of the judgment lien.

**{¶ 38}** However, there is additional evidence that could suggest that Resolution

was reckless or acted with malice when it failed to promptly release the entire judgment. Resolution relies on the language of the cognovit note to support its entitlement to attorney fees incurred in its collection efforts, but the judgment entered in the cognovit note case did not provide for the payment of attorney fees.   (*See* Exhibit B to the Manns' January 2015 motion for summary judgment.)   Since the enforcement action on the cognovit note resulted in a judgment, it is arguable that Resolution acted recklessly in relying on the terms of the cognovit note, rather than the judgment entry, in determining how to apply the proceeds from the sale of the foreclosed property, and that Resolution acted recklessly when it applied the proceeds first to attorney fees, given that the judgment entry did not award attorney fees to it.

{¶ 39}  In addition, while the judgment in the foreclosure action did provide for attorney fees, the trial court expressly held that any money received from the sale of the foreclosed property would first be used to pay the county treasurer and then applied to the note balance (i.e., principal and interest); the remainder was to be held in escrow by the court clerk.   As quoted above, the judgment entry expressly stated that "there may be due to Plaintiff additional sums advanced by it under the terms of the Loan Documents to pay real estate taxes, insurance premiums, property protection, and attorneys' fees, which sums are to be determined by further Order, and paid as a 'Third' priority as provided hereinabove."

{¶ 40}  Resolution did not have any judgment entry establishing the amount of attorney fees owed by the Manns, nor did it have any judgment entry which allowed Resolution to apply payments received by the Manns to attorney fees and costs prior to the principal and interest owed on the cognovit note.   Although the sale of the foreclosed

property occurred as a result of a private sale, rather than a sheriff's sale, Resolution arguably acted recklessly in applying the proceeds from the sale in a manner contrary to the terms of the judgment entry in the foreclosure action, absent agreement from the Manns and/or the trial court.[1]

**{¶ 41}** Finally, as we stated in *Mann I*, Resolution failed to release the lien once it had been paid, and it did not do so for five months, when the trial court in the cognovit note case ordered the judgment lien released. Resolution also demanded a release of claims by the Manns as a condition of releasing the lien. Although these facts do not establish bad faith on Resolution's part, as a matter of law, we find that when the evidence is construed in the Manns' favor, genuine issues of material fact exist.

**{¶ 42}** The trial court's judgment granting summary judgment to Resolution is reversed, and the matter will be remanded for further proceedings.

. . . . . . . . . . . . .

FAIN, J. and WELBUM, J., concur.

Copies mailed to:

Stephen E. Klein
Daniel A. DeMarco
Phillip G. Eckenrode
Hon. Jeannine N. Pratt

---

[1] As we commented in *Mann I*, the order of dismissal in the foreclosure case is not part of the record. *Mann I* at ¶ 24. However, we note, generally, that once a judgment and decree of foreclosure is entered by a trial court, a lender cannot voluntarily dismiss its action, pursuant to Civ.R. 41(A)(1)(a). *See Countrywide Home Loans Serv. v. Nichpor*, 136 Ohio St.3d 55, 2013-Ohio-2083, 990 N.E.2d 565.