[Cite as *GC3, L.L.C. v. Empowerment Temple, Inc.*, 2024-Ohio-5509.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| GC3 LLC | : | |
| | : | |
| Appellees | : | C.A. No. 30197 |
| | : | |
| v. | : | Trial Court Case No. 2020 CV03040 |
| | : | |
| EMPOWERMENT TEMPLE INC., ET AL. | : | (Civil Appeal from Common Pleas Court) |
| | : | |
| Appellant | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on November 22, 2024

. . . . . . . . . . .

JONATHAN HOLLINGSWORTH, Attorney for Appellant

ANDREW M. HANNA, Attorney for Appellee

. . . . . . . . . . . .

TUCKER, J.

{¶ 1} Empowerment Temple, Inc. appeals from the trial court's entry of summary judgment against it on its slander-of-title counterclaim against appellee GC3, LLC.

Empowerment Temple filed the counterclaim in response to GC3's placing a mechanic's lien on Empowerment Temple's property and seeking foreclosure on the lien.

{¶ 2} Empowerment Temple contends the trial court misapplied summary-judgment standards by misallocating the burden of proof. Empowerment Temple also asserts that genuine issues of material fact exist as to whether GC3 reasonably believed it had a valid contractual claim against Empowerment Temple when placing a mechanic's lien on Empowerment Temple's property or, later, when an arbitrator ruled against GC3 on the contractual claim and the trial court confirmed the arbitrator's decision. Finally, Empowerment Temple contends the trial court erred in finding that GC3 reasonably waited until April 2023 to release the mechanic's lien, which had been recorded in January 2020.

{¶ 3} We conclude that our de novo review renders harmless any error by the trial court in allocating the applicable summary-judgment burdens. Construing the evidence in a light most favorable to Empowerment Temple, we believe reasonable minds could disagree about whether GC3 acted with reckless disregard as to the invalidity of its mechanic's lien, either when it filed the lien or at various points in time thereafter, and long before releasing the lien. Accordingly, the trial court's entry of summary judgment in favor of GC3 on Empowerment Temple's slander-of-title counterclaim will be reversed, and the case will be remanded for further proceedings.

## I. Background

{¶ 4} Empowerment Temple hired GC3 to repair tornado damage to its buildings. The parties executed a June 2019 construction-services contract memorializing their

agreement. GC3 subsequently performed some work for which Empowerment Temple refused to pay. As a result, GC3 initiated arbitration against Empowerment Temple for breach of contract. It also recorded a mechanic's lien against Empowerment Temple's property in January 2020. GC3 then filed the present action in the trial court seeking to foreclose on the mechanic's lien. In response, Empowerment Temple filed a slander-of-title counterclaim alleging that GC3's lien was baseless. The trial court stayed litigation while the arbitration proceeded.

{¶ 5} In January 2022, the arbitrator issued a final decision denying GC3's contractual claim. Although the parties had entered into a written agreement, the arbitrator found that key terms were undefined. The "scope of work" to be performed by GC3 was identified only as the "scope of loss" by Empowerment Temple. The agreement stated that the "scope of loss" would be determined by the insurance carrier, and GC3's "work" would be limited to that "scope of loss" unless GC3 and Empowerment Temple agreed otherwise in writing. The agreement recognized that the "scope of work" was still "being developed." It provided that the "scope of work" would be made part of the agreement through a "change order" when completed. Finally, the agreement provided that the "contract price" would be whatever the insurance company agreed to pay plus any additional work required or authorized by Empowerment Temple.

{¶ 6} The arbitrator determined that the "scope of work" to be performed never was defined and made part of the agreement through a required change order. The arbitrator also found no agreed price. Therefore, the arbitrator found GC3 entitled to no compensation under the agreement. Although GC3 had performed "significant

preparatory work," the arbitrator saw no evidence that Empowerment Temple "was clearly aware of the work" or that Empowerment Temple had "obtained direct benefits from it." The arbitrator reasoned that "[s]ometimes in litigation, money for work cannot be awarded—not because no work was performed, but because any calculation of such damages is contrary to the terms of a contract that allocated risk." The arbitrator found that "GC3 failed to complete a key term in a contract that it drafted." The arbitrator concluded that "GC3 proceeded to do significant work under a contract before it had the documentation required under the express terms of a contract that it drafted; so accordingly, the risk, not-unfairly, falls to GC3." Later in its decision, the arbitrator reasoned that "GC3 proceeded with work on a contract before the price was determined according to the Contract's express terms, meaning it cannot get a fee for work that was not yet approved under the Contract's terms."

{¶ 7} Following the arbitrator's ruling, Empowerment Temple sought summary judgment on GC3's lien-foreclosure cause of action and on the liability portion of its own slander-of-title counterclaim. Before addressing summary judgment, the trial court confirmed the arbitrator's decision in May 2022. Thereafter, in February 2023, the trial court entered summary judgment for Empowerment Temple on GC3's lien-foreclosure claim. In light of the arbitrator's decision, the trial court found no debt owed to GC3 by Empowerment Temple under the contract. Without a valid underlying debt, the trial court found nothing for GC3 to secure and no basis for a mechanic's lien.

{¶ 8} With regard to Empowerment Temple's counterclaim for slander of title, the trial court opined that genuine issues of material fact precluded summary judgment for

Empowerment Temple. On that issue, the trial court reasoned:

> Here, reasonable minds could conclude that GC3 operated under a good faith belief that it had a legitimate claim to payment/compensation for work it performed pursuant to the Contract. The Arbitrator ultimately concluded that an award of damages was not appropriate, not because no work was performed, but because any calculation of such damages would be contrary to the terms of the contract that allocated risk. The Arbitrator determined that GC3 failed to complete a key term in the contract that it drafted and proceeded to do significant work under a contract before it had the documentation required under the express terms of the contract that it drafted. The Arbitrator also concluded that no equitable or other justifiable basis to award damages existed, explaining that "there is no evidence that Empowerment was clearly aware of the work or that it obtained direct benefits from it." As a result, this Court cannot conclude that the third element of malice or reckless disregard is satisfied in this instance. However, while it is true that GC3 previously acted with the reasonable belief that it had a meritorious claim for money due under the contract for work performed, this belief is arguably no longer reasonable in light of the Arbitrator's decision and this Court's confirmation of the arbitration award. Therefore, at this time, this Court must conclude that genuine issues of material fact exist with respect to Empowerment's claim for slander of title.

(Citations omitted.) February 8, 2023 Decision, Order, and Entry at 9-10.

{¶ 9} In response to the trial court's summary-judgment ruling, GC3 filed a lien release on March 3, 2023. That filing was ineffective, however, as it was done in Cuyahoga County. GC3 subsequently filed an effective lien release in Montgomery County on April 12, 2023. Thereafter, in July and August 2023, the parties filed additional briefing on Empowerment Temple's slander-of-title counterclaim. After giving notice to the parties and without objection, the trial court construed the briefs as cross-motions for summary judgment on the counterclaim.

{¶ 10} On April 23, 2024, the trial court sustained GC3's motion for summary judgment on Empowerment Temple's slander-of-title counterclaim and overruled Empowerment Temple's competing renewed motion. In essence, the trial court determined as a matter of law (1) that GC3 had reasonable grounds to believe in the validity of its lien claim when it recorded the mechanic's lien, (2) that GC3 continued to have reasonable grounds to believe in the validity of its lien claim despite the arbitrator's decision in January 2022, and (3) that GC3 continued to have reasonable grounds to believe in the validity of its lien claim until February 8, 2023, when the trial court entered summary judgment against GC3 on its attempt to foreclose on the mechanic's lien.

{¶ 11} The trial court summarized its analysis as follows:

Here it is clear that GC3 had a reasonable basis to believe that it was entitled [to compensation] for work "undertaken by virtue of a contract" when it filed the mechanic's lien. As such, this Court disagrees with Empowerment Temple's argument that GC3 could not have had a reasonable belief that it had a legally enforceable contract with Empowerment Temple.

Furthermore, even after the arbitration ended, litigation as to GC3's lien claim remained pending and it wasn't until this Court issued its February 8, 2023 Decision as to the lien foreclosure claim that GC3 no longer had a reasonable belief to assert a mechanic's lien against the property.

Finally, the Court finds that GC3 took the necessary steps to quickly release the lien upon receiving this Court's Decision and Order. Although there was some confusion regarding the county in which the release was filed, the Court nonetheless finds GC3's actions and steps in releasing the mechanic's lien, "scrivener's error" and all, reasonable. Based on the foregoing, the Court finds that Empowerment Temple has failed to show the necessary "malice" or "reckless disregard" with respect to GC3's filing of the mechanic's lien as required.

April 23, 2024 Decision, Order, and Entry at 8-9.

{¶ 12} Empowerment Temple has appealed from the trial court's summary-judgment ruling on its slander-of-title counterclaim, advancing four assignments of error.

## II. Analysis

{¶ 13} Empowerment Temple's first assignment of error states:

The Common Pleas Court committed reversible error when it granted summary judgment without considering and applying the standard for summary judgment set forth in Civ.R. 56 and in binding precedent from this Court and the Ohio Supreme Court.

{¶ 14} Empowerment Temple contends the trial court erred in applying summary-

judgment standards by misallocating the burden of proof. In particular, it claims the trial court obligated it to prove its slander-of-title counterclaim rather than placing the burden on GC3 to demonstrate that Empowerment Temple lacked evidence to support the counterclaim.

{¶ 15} In its summary-judgment ruling, the trial court found as a matter of law that GC3 possessed a reasonable belief in the validity of its mechanic's lien when it filed the lien. The trial court also found as a matter of law that GC3's reasonable belief in the validity of its mechanic's lien continued despite the arbitrator's adverse ruling and the trial court's confirmation of the arbitrator's award. The trial court reasoned that its February 8, 2023 entry of summary judgment for Empowerment Temple on GC3's lien-foreclosure claim "arguably" gave GC3 notice that its mechanic's lien was invalid. Finally, the trial court found as a matter of law that GC3 promptly released the mechanic's lien in April 2023 after erroneously seeking in March 2023 to release the lien in Cuyahoga County.

{¶ 16} In making the foregoing determinations, the trial court did not address the standards governing summary judgment. Nor did it explicitly allocate the burden of proof in its legal analysis. Near the end of its decision, however, the trial court stated: "Based on the foregoing, the Court finds that Empowerment Temple has failed to show the necessary 'malice' or 'reckless disregard' with respect to GC3's filing of the mechanic's lien as required." At another point in its ruling, the trial court found "the arguments set forth by GC3 convincing regarding the claim for slander of title." In those arguments, GC3 had asserted that it was entitled to judgment as a matter of law on Empowerment Temple's slander-of-title counterclaim. After reviewing the parties' arguments, the trial

court proceeded to overrule Empowerment Temple's renewed summary-judgment motion on its slander-of-title counterclaim and to sustain GC3's competing motion.

{¶ 17} Upon review, we decline to reverse the trial court's entry of summary judgment for GC3 on the basis that it improperly allocated the burden of proof. Whether the trial court did so is unclear. But even if it did, our de novo review of summary judgment renders any such error harmless and not grounds for reversal. *Horton v. City of Dayton*, 53 Ohio App.3d 68 (2d Dist. 1988) ("[E]ven if the trial court applied an incorrect standard in deciding [the defendant's] motion for summary judgment, that error would be harmless because this court . . . is obliged to determine, as a matter of law, whether summary judgment was proper, applying the correct standard under Civ.R. 56."). Accordingly, Empowerment Temple's first assignment of error is overruled.

{¶ 18} Empowerment Temple's second, third, and fourth assignments of error address the merits of the trial court's entry of summary judgment for CS3 on the slander-of-title counterclaim. They assert:

> The Common Pleas Court committed reversible error when it granted summary judgment in favor of GC3 on Empowerment Temple's claim for slander of title despite the existence of genuine issues as to the reasonableness of GC3's claimed grounds to believe that it had a valid contractual claim against Empowerment Temple when it recorded its lien against Empowerment Temple's property in January 2020.

> The Common Pleas Court committed reversible error when it granted summary judgment in favor of GC3 on Empowerment Temple's claim for

slander of title despite the existence of genuine issues as to the reasonableness of GC3's claimed grounds to believe that it continued to have a valid contractual claim against Empowerment Temple despite the Arbitrator's issuance of his final award in January 2022 and the Trial Court's confirmation of the Arbitrator's final award in May 2022.

The Common Pleas Court committed reversible error when it granted summary judgment in favor of GC3 on Empowerment Temple's claim for slander of title on the basis that GC3 acted "reasonably" in releasing in April 2023 the lien that it had recorded against Empowerment Temple's property in January 2020.

{¶ 19} In these assignments of error, Empowerment Temple contends summary judgment for GC3 was improper because genuine issues of material fact exist as to whether GC3 acted reasonably in (1) recording a mechanic's lien, (2) failing to release the lien after the arbitrator's decision and the trial court's confirmation of that decision, or (3) belatedly releasing the lien in April 2023.

{¶ 20} Under Civ.R. 56(C), a movant is entitled to summary judgment upon demonstrating (1) that there is no genuine issue as to any material fact, (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to only one conclusion, and that conclusion is adverse to the non-moving party. *Rhododendron Holdings, LLC v. Harris*, 2021-Ohio-147, ¶ 22 (2d Dist.). "The burden of demonstrating that no genuine issues exist as to any material fact falls upon the moving party requesting a summary judgment." *Harless v. Willis Day Warehousing Co., Inc.*, 54

Ohio St.2d 64, 66 (1978). Once the moving party has satisfied its burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to set forth specific facts showing a genuine issue for trial. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). We review a summary-judgment decision de novo. *Lafon v. Iron Tiger Logistics*, 2015-Ohio-2428, ¶ 8 (2d Dist.). We apply "the same standard that the trial court should have used, and we examine all the Civ.R. 56 evidence, without deference to the trial court, to determine whether, as a matter of law, no genuine issues exist for trial." *McAlpine v. McCloud*, 2021-Ohio-2430, ¶ 13 (2d Dist.).

{¶ 21} "Slander of title to real estate is a tort action against one who falsely and maliciously defames title to property and causes some special pecuniary damages or loss." *Hahn's Elec. Co. v. Cochran*, 2002-Ohio-5009, ¶ 24 (10th Dist.), citing *Green v. Lemarr*, 139 Ohio App.3d 414, 430 (2d Dist. 2000). "Generally, slander of title to real estate involves the wrongful recording of an unfounded claim, such as a mechanic's lien, to the property of another." *Id.*, citing *Green* at 433. In order to prevail in a slander-of-title action, a plaintiff must prove "(1) there was a publication of a slanderous statement disparaging claimant's title; (2) the statement was false; (3) the statement was made with malice or made with reckless disregard of its falsity; and (4) the statement caused actual or special damages." (Citation omitted.) *Green* at 430-431. "The filing of a mechanic's lien satisfies the publication element." *Prater v. Dashkovsky*, 2007-Ohio-6785, ¶ 13 (10th Dist.), citing W. Prosser, The Law of Torts § 122 at 939 (3 Ed.1964).

{¶ 22} Here a trier of fact certainly could conclude that GC3 recorded an unfounded mechanic's lien. This conclusion flows from the arbitrator's ruling against GC3

on its breach-of-contract claim and the trial court's subsequent entry of summary judgment against GC3 on its lien-foreclosure claim. The trial court nevertheless entered summary judgment against Empowerment Temple based on its inability to satisfy the third element above. Therefore, we will focus on whether a trier of fact reasonably could find that GC3 filed its mechanic's lien with malice or with reckless disregard as to the falsity of the lien. In resolving this issue, we note that liability for slander of title may arise from filing of an unfounded lien or failing promptly to release a lien once its unfounded nature becomes apparent. *Mann v. Resolution T Co.*, 2014-Ohio-2451, ¶ 39 (2d Dist.) ("Although the lien may have been accurate when it was filed, it became false once the debt was paid and Resolution refused to remove the lien. One could also conclude that Resolution acted with reckless disregard of the falsity."); *Mann v. Resolution T Co.*, 2015-Ohio-3266, ¶ 34 (2d Dist.) ("Upon review of the record, we find that genuine issues of material fact remain as to whether Resolution's failure to release the entire judgment lien along with the mortgage lien constituted malice or a reckless disregard of the falsity of the judgment lien.").

{¶ 23} Although *Mann* involved a slander-of-title action premised on an unfounded judgment lien and mortgage lien rather than a mechanic's lien, it nevertheless establishes the key principle that slander of title may involve filing an unfounded lien *or* failing timely to release a lien. On appeal, GC3 cites cases from other appellate districts purportedly limiting the analysis to whether a party acted recklessly when initially recording a lien. According to GC3, no cause of action for slander of title can exist if a party acted reasonably in recording a lien. Even if subsequent events make the unfounded nature of

the lien apparent, GC3's argument suggests that a party may refuse to release it without consequence provided that the lien initially was recorded in good faith. To the extent that any of the cases cited by GC3 support this proposition, we decline to follow them. We believe the better view is expressed in this court's two prior opinions in *Mann*.

{¶ 24} With the foregoing considerations in mind, and construing the evidence and all reasonable inferences in a light most favorable to Empowerment Temple, we believe a trier of fact could conclude that GC3 acted with reckless disregard as to the invalidity of its mechanic's lien (1) when it filed the lien or very shortly thereafter, (2) when it failed to release the lien promptly after the arbitrator's adverse ruling, or (3) after the trial court confirmed the arbitrator's decision.

{¶ 25} The record reflects that GC3 recorded an $82,760.66 mechanic's lien against Empowerment Temple's property in January 2020. Thereafter, in August 2020, GC3 commenced the present lawsuit seeking foreclosure on the lien. In October 2020, GC3 moved to stay proceedings pending arbitration of its related breach-of-contract action. That same month, Empowerment Temple filed a memorandum opposing a stay. Therein, it pointed out that the parties' signed agreement failed to identify the "scope of work" to be performed by GC3. As set forth above, the agreement explicitly recognized that the work to be completed by GC3 still was "being developed." Empowerment Temple also noted that the agreement left Empowerment Temple's "scope of loss" unspecified and left the "contract price" still to be determined.

{¶ 26} Under these circumstances, a trier of fact could conclude that GC3 acted unreasonably in performing unauthorized work and seeking payment from Empowerment

Temple. Indeed, a trier of fact could conclude that GC3 had no right to payment and that it recklessly disregarded the invalidity of its mechanic's lien either when it filed the lien in January 2020 or in October 2020 when Empowerment Temple filed a memorandum pointing out the foregoing deficiencies. Given the nature of the defects in GC3's claim to compensation, which arguably should have been apparent based on a reading of the parties' written agreement, and the lack of record evidence regarding the extent of GC3's knowledge and understanding of these deficiencies, a trier of fact might conclude that the unfounded nature of the lien should have been apparent to GC3 when it recorded the lien or shortly thereafter when Empowerment Temple pointed out the deficiencies in its October 2020 memorandum opposing a stay pending arbitration.

{¶ 27} Alternatively, a trier of fact reasonably might find that GC3 recklessly disregarded the unfounded nature of its mechanic's lien once the arbitrator issued a decision in January 2022. The arbitrator reiterated the deficiencies previously pointed out by Empowerment Temple and held that GC3 was not entitled to any financial recovery under the parties' written agreement. Construing the evidence in a light most favorable to Empowerment Temple, a trier of fact could find that this ruling by the arbitrator should have alerted GC3 that no enforceable debt existed on which to predicate a mechanic's lien. We believe a genuine issue of material fact exists as to whether GC3 recklessly disregarded the falsity of its mechanic's lien by failing to release it shortly after the arbitrator's decision. For essentially the same reasons, a trier of fact also reasonably might conclude that GC3 recklessly disregarded the unfounded nature of its mechanic's lien upon the trial court's confirmation of the arbitrator's decision in May 2022.

{¶ 28} In opposition to the foregoing analysis, GC3 maintains that differences exist between contractual claims and statutory lien claims. That being so, GC3 reasons that the arbitrator's adverse ruling and the trial court's confirmation of the arbitrator's decision did not resolve the viability of the lien. GC3 insists that it possessed reasonable grounds to believe in the validity of its lien until the trial court dismissed its lien-foreclosure claim in February 2023. GC3 asserts that it timely released the lien after that ruling.

{¶ 29} Upon review, we find GC3's arguments to be unpersuasive. The mechanic's-lien statute, R.C. 1311.02, provides in relevant part: "Every person who performs work or labor upon or furnishes material in furtherance of any improvement undertaken by virtue of a contract, express or implied, with the owner, part owner, or lessee of any interest in real estate . . . has a lien to secure the payment therefor[.]" Here, however, the arbitrator found that GC3 was not entitled to any payment from Empowerment Temple under the terms of the parties' written agreement. Regardless of some differences that may exist between contractual claims and mechanic's liens, this finding by the arbitrator effectively resolved the lien issue.

{¶ 30} Indeed, if Empowerment Temple did not owe GC3 any money under the parties' agreement, then there was no debt for a mechanic's lien to secure. The trial court ultimately recognized this fact in its February 8, 2023 decision, order, and entry awarding Empowerment Temple summary judgment on GC3's lien-foreclosure action. In its ruling, the trial court correctly noted that a valid lien cannot exist without an underlying debt. The trial court then concluded: "Here, GC3 has failed to show a valid, legally enforceable claim to the compensation it claims it is due under the contract. The arguments set forth by GC3

are insufficient to meet its burden on the underlying matter of the debt. Accordingly, GC3's lien foreclosure claim must fail as a matter of law." In reaching this conclusion, the trial court merely pointed out and reiterated what arguably should have been apparent to GC3 immediately after the arbitrator's January 2022 decision.

{¶ 31} On appeal, GC3 argues that the Ohio Mechanic's Lien Act does not require a "signed change order" before a contractor can recover on a lien for extra labor and materials. The case GC3 cites, *Midwest Curtainwalls, Inc. v. Pinnacle 701, LLC*, 2009-Ohio-3740 (8th Dist.), is readily distinguishable. In *Midwest Curtainwalls*, a subcontractor filed an arbitration action against the general contractor for breach of contract seeking payment for work performed. The subcontractor also recorded a mechanic's lien against the subject property. The arbitrator awarded the subcontractor damages including the unpaid balance of the subcontract and an additional amount for extra work performed under pending change orders. The trial court confirmed the arbitration award. The trial court later entered summary judgment for the subcontractor to foreclose on the mechanic's lien.

{¶ 32} On appeal, the Eighth District recognized that breach of contract and foreclosure on a mechanic's lien are not identical causes of action. It nevertheless recognized that "[t]he arbitrator's determination of the contract value of the work performed is prima facie evidence of its value for purposes of the mechanic's lien claim." *Id*. at ¶ 41. Highlighting a key difference between contractual actions and mechanic's liens, the Eighth District observed that a party may possess both an in personam contractual action against a property owner and a statutory in rem action to foreclose on

a mechanic's lien against the owner's property. *Id.* at ¶ 55-56.

{¶ 33} With regard to the "change order" issue raised by GC3 herein, the Eighth District held that no signed change order was required for the subcontractor to recover on its mechanic's lien for extra labor and materials. Notably, however, the subcontractor had performed the extra work at the explicit direction of the general contractor and the property owner. The Eighth District reasoned that "verbal instructions" to the subcontractor to perform the extra work constituted a "constructive change order" entitling the subcontractor to include the extra work in its lien claim. *Id.* at ¶ 61.

{¶ 34} Unlike *Midwest Curtainwalls*, the arbitrator in the present case awarded GC3 no money under the parties' written agreement. Applying the rationale of *Midwest Curtainwalls*, the arbitrator's determination that Empowerment Temple owed GC3 nothing was at least prima facie evidence of the non-existent value of GC3's mechanic's lien. Unlike *Midwest Curtainwalls*, GC3 possessed neither an enforceable contractual claim nor a valid mechanic's lien. The change-order analysis is also distinguishable. In *Midwest Curtainwalls*, the Eighth District found the subcontractor entitled to compensation for extra work based on oral directives from the general contractor and the property owner to perform the work. Unlike *Midwest Curtainwalls*, the arbitrator here found "no evidence that Empowerment was clearly aware of the work . . . or that it obtained direct benefits from it." Therefore, the arbitrator found GC3 not entitled to compensation.

{¶ 35} GC3 also cites *Midwest Curtainwalls* for the proposition that "the entitlement to enforce a mechanic's lien arises as a matter of law and not from a written instrument or verbal contract" and that "foreclosure on a mechanic's lien does not implicate any

contractual right to recovery." *Midwest Curtainwalls* at ¶ 56. The Eighth District made these statements in the context of recognizing that a laborer may seek recovery in personam for breach of contract while also maintaining an in rem mechanic's-lien action against the owner's property. *Midwest Curtainwalls* does not support the notion that a laborer can prevail on a mechanic's lien in the absence of any underlying debt obligation.

{¶ 36} Finally, GC3 cites *Zara Constr., Inc. v. Belcastro*, 2022-Ohio-788 (5th Dist.), for the undisputed proposition that a mechanic's lien need not be based on "a written, express contract." As noted above, the mechanic's-lien statute, R.C. 1311.02, explicitly authorizes a lien for work "undertaken by virtue of a contract, express or implied[.]" In *Zara Construction*, a contractor filed a mechanic's lien and claimed entitlement to compensation under an implied-contract theory based on unjust enrichment and quantum meruit. *Id.* at ¶ 46-48. Although the Fifth District appears to have accepted this theory, it does not help GC3 for at least two independent reasons. First, unjust enrichment and quantum meruit are equitable remedies. *Meyer v. Lucas*, 2024-Ohio-3035, ¶ 25 (2d Dist.). Here the arbitrator found GC3 not entitled to any equitable relief. Second, unjust enrichment and quantum meruit are based on a contract "implied in law." *Id.* "An implied-in-law contract is a legal fiction also called quasi-contract because it is not characterized by a meeting of the minds[.]" *Staffilino Chevrolet, Inc. v. Balk*, 2004-Ohio-3633, ¶ 40 (7th Dist.). But the reference to an "implied contract" in the mechanic's-lien statute is limited to one "implied in fact" that "may be proved from the evidence of the circumstances surrounding the transactions between the parties from which the terms may be reasonably inferred." *Gebhart v. United States*, 172 Ohio St. 200, 210 (1961). A contract

implied in law will not support a mechanic's lien. *Id.* at 209-210; *see also Benes v. United States*, 276 F.2d 99, 106-07 (6th Cir. 1960) ("While no cases have been cited to the court construing the mechanic's lien statute on this point, it would appear from the language and general purpose of the statute as construed by the Ohio courts that in order for a mechanic's lien to arise by virtue of an implied contract, the contract must be implied in fact as distinguished from a contract implied in law.").

{¶ 37} For all of the foregoing reasons, we sustain Empowerment Temple's second, third, and fourth assignments of error. We hold that the trial court erred in entering summary judgment for GC3 on Empowerment Temple's slander-of-title counterclaim. Construing the evidence in a light most favorable to Empowerment Temple, reasonable minds could reach differing conclusions about whether GC3 acted with reckless disregard as to the invalidity of its mechanic's lien, either when it filed the lien or at various points in time thereafter, and long before releasing the lien.

{¶ 38} We express no opinion on Empowerment Temple's ability to satisfy the final element of its slander-of-title counterclaim, namely the existence of actual or special damages. The trial court did not address this issue in its April 23, 2024 summary-judgment ruling. Instead, it entered summary judgment for GC3 based solely on Empowerment Temple's perceived inability to satisfy the third element. We decline to decide in the first instance whether a triable issue exists on damages.

### III. Conclusion

{¶ 39} Having sustained Empowerment Temple's second, third, and fourth, assignments of error, we reverse the trial court's entry of summary judgment for GC3 on

the slander-of-title counterclaim and remand the case for further proceedings.

. . . . . . . . . . . . .

LEWIS, J. and HUFFMAN, J., concur.